## T. H. CHAPMAN V. THE STATE.

*No. 1194.   Decided February 17th, 1897.*

**1.  Local Option—Order for Election as Evidence—Bill of Exceptions.**

A bill of exceptions to the introduction of an order of the Commissioners' Court, to be complete, should either set out the entire order or give its substance, and state the facts and conditions attendant upon its admission in evidence.

**2.  Same—Jurisdiction of Commissioners' Court—Constitutional Law.**

The Constitution, by Art. 5, Sec. 18, confers upon the County Commissioners' Court, "Such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or may be hereafter prescribed." Held: That a local option election appertains to counties and involves a matter of county regulation, and said court has authority to order such election.

**3.  Same—Notice of Election.**

Where an order declaring the result of a local option election has been issued, the presumption obtains that everything necessary to holding a legal election has been done, and, the burden is on the defendant to show (if such was the case), that the notices of the election were not given, or had not been given by the proper person.

**4.  Same—Counting the Vote—Declaring the Result.**

It is no objection to the authority, to issue the order declaring the result of a local option election, that the polls or poll boxes were not before the court, and were not opened and counted. A failure even to count the votes, as required by the statute, would not be fatal to the order. Following, Ewing v. Duncan, 81 Texas, 230.

**5. Same—Order Declaring the Result.**

It is no valid objection to the order of the Commissioners' Court declaring the result of a local option election, that said court had no authority to declare the result and make such order; even if they had no such authority, such action by the court would not render the election void.

**6. Same.**

An order declaring local option is not invalid because it fails specially to recite the exceptions under which intoxicants might be sold, viz: for medical and sacramental purposes. The law engrafts these exceptions, and it is not necessary that the order should allude to the matter.

**7. Same—Officers Conducting the Election—Statutes Directory—Charge.**

The law requires that local option elections are to be held under the general laws regulating elections; the general laws regulating elections requires, that the presiding officer shall select three other judges and four clerks in precincts where one hundred votes had been cast at a former election. At an election where there were but two judges and two clerks, instead of three judges and four clerks. Held: The election was not void, there being no suggestion that the election was not in all respects fair, nor that the said two judges and two clerks failed to perform all the duties as required under the general law, as prescribed for eight officers. The statutory regulations for conducting elections are directory, and their disregard will not render the election void where there has been no fraudulent intent and no uncertainty produced in the result of the election; and, where such irregularity did not affect the result in the slightest degree, it was not error for the court to instruct the jury, that the local option law was in force in the prescribed territory.

**8. Same—As to Number of Voting Boxes.**

Where a local option election appears to have been held fairly and honestly, and there is no suggestion of fraud or that the facilities for voting were not amply sufficient, it is no valid objection that but one voting box was provided and opened in the various precincts.

APPEAL from the County Court of Johnson. Tried below before Hon. F. E. ADAMS, County Judge.

Appeal from a conviction for violating local option; penalty, a fine of $20, and twenty days' imprisonment in the county jail.

The following statement of the case, taken from appellant's brief, is substantially correct, viz: In this case the State introduced certified copies of the order authorizing an election in Johnson County, Texas, to determine whether the sale of intoxicating liquors shall be prohibited therein; the judgment of the court assuming to declare the result, and proclamation of the County Judge.

The witness, Bell, testified, that he had signed an order in writing to the Dallas Brewery Company, which was printed, and given to him by Jack Brown, a partner of defendant, for five dozen pint bottles of beer. That he did not pay anything for the beer at that time; that in a few days he was informed that his beer had arrived, and thereafter, on several dates, among others, the 20th day of August, 1895, the defendant had delivered to him pint bottles of beer, for which he paid at the rate of fifteen cents per pint bottle, as he received it; that he could get any of said beer from defendant whenever he wanted it.

The appellant, in his own behalf, testified, that he was running in Cleburne in August, 1895, a cold storage establishment. That he had never sold, or given beer to the witness, Bell, before the said five dozen pint bottles of beer arrived, which had been ordered from the Dallas

brewery; that Bell usually paid for the beer at the rate of fifteen cents per pint bottle, when he received it. This included the cost of the beer, as well as the charge for keeping it cold, and the charge for storing it.

It was shown on the trial that at the Grange Hall election precinct, the Robinson Branch election precinct, the Lone Willow election precinct, the Cresson election precinct, the Bruce election precinct, the Godley election precinct, the Greenbrier election precinct, less than one hundred votes were polled at the last general election, in 1894; that being the last general election held in Johnson County, next preceding the said prohibition election. It was shown that in all the other election precincts in Johnson County, more than one hundred votes were cast at the last general election, and that at the prohibition election, held in said county, on the 7th day of January, 1895; that same was held by one presiding officer and two clerks, and no more, and that five persons held said election, at each and all of the said above places last above named. It was shown that at said election, at the places last above named, only one ballot box was used, in which all of the ballots cast at said election were deposited. It was admitted that the Commissioners' Court of Johnson County, Texas, at its session held on the 18th day of January, 1895, did not open the ballot boxes and count the votes actually cast at said election; that said court at said time opened and canvassed the returns of said election, so held at said time, and after such canvass that the total number of votes cast at said election for prohibition was 2324, and that the total number of votes cast at said election against prohibition was 1448.

*W. F. Ramsey*, for appellant. "The court erred in admitting, over the objection of defendant, the order of the Commissioners' Court, ordering the election." The order of the Commissioners' Court objected to, was insufficient, because it required and directed the officers at said prohibition election, to hold same in accordance with the law of the State governing elections, in so far as said laws were applicable, instead of directing them and providing that such election should be held in accordance with the general laws in every particular, except where otherwise provided by the statutes relating to prohibition elections.

The Commissioners' Court is a court of limited jurisdiction, created by the Constitution of this State, and has no authority to order elections to ascertain the result thereof, and in this manner to make laws for the government of the general public.

The sixth assignment of error is as follows: "The court erred in admitting, over the objection of defendant, the order of the Commissioners' Court, declaring the result of the election." To ascertain legally the result of the prohibition election in this State it is the duty of the Commissioners' Court that the votes should be actually counted by the Commissioners' Court, said act being a condition precedent to any declaration of the result of such election or any order prohibiting the sale

of intoxicating liquors, and it affirmatively appearing from the order in this case that the Commissioners' Court merely canvassed the returns and that they did not count the vote through their said order declaring the sale of intoxicating liquors unlawful in Johnson County, was nugatory and invalid.

The law under which said election purports to have been holden, is unconstitutional, and the Commissioners' Court, being a court created by the Constitution for the purpose alone of conducting county affairs, and being a court created by the Constitution for this alone, no other power and authority can be conferred upon it than is contained within the Constitution creating it.

Said order purporting to prohibit the sale of intoxicating liquors is invalid in that, it does not prohibit the sale of intoxicating liquors in Johnson County, except for the purpose, and under the regulations specified in the title of the law under which said election is authorized, but it only prohibits such sale within said prescribed limits except for the purposes specified in the law, in such cases made and provided, without specifying the particular statute.

The seventh assignment of error is as follows: "The court erred in admitting in evidence, over the objection of defendant, the certificate of the County Judge, showing that publication of the order declaring the result of the local option election." It not appearing from any evidence that the Cleburne Chronicle, in which the publication of the result of the election, and the order, was made, had the largest circulation of any newspaper in Johnson County, Texas, the pretended proclamation of the County Judge should have been excluded.

The eighth assignment of error is as follows: "The court erred in so much of its charge to the jury as instructed as a fact that the sale of intoxicating liquors in Johnson County, Texas, after the 6th day of April, 1895, was prohibited in Johnson County, Texas, after the 6th day of April, 1895, because said charge is on the weight of the evidence, the record introduced in the case showing that such election relied on was illegal, for the following reasons: (1) The evidence shows that legal notices of such election were not given as required by law; that the notices which were given, and the copies of the order of the Commissioners' Court, ordering the election, were not true and correct copies of said order; that said notices were not given by the proper parties; that the certificate of said copy was not such as is required by law; that said certificate was signed by Sam P. Ramsey, Clerk of the County Court of Johnson County, Texas, and not as Clerk of the Commissioners' Court of Johnson County, Texas. (2) The uncontradicted evidence in the case shows that the election was not holden by the proper number of persons; it appearing that at most voting places in said county that more than one hundred votes were cast at the last general election; same being the last general election next before the prohibition election relied on, and that the election at all of said precincts was not holden by the requisite number of persons, there.

being only two judges and two clerks present, and conducting the said election; and that only five persons held said election, and not eight, as required by law. (3) Because the Commissioners' Court had no authority to enter an order prohibiting the sale of intoxicating liquors in Johnson County, Texas, because they had failed to open the ballot boxes and count the votes cast at said election, as required by law; the record of the case showing that the votes polled at said election were not counted in the first instance by the requisite number of men, and were not counted at all by the Commissioners' Court, as required by law."

The evidence shows that legal notices of such election were not given as required by law; that the notices which were given, and the copies of the order of the Commissioners' Court, ordering the election, were not true and correct copies of said order; that said notices were not given by the proper parties; that the certificate of said copy was not such as is required by law; that said certificate was signed by Sam P. Ramsey, Clerk of the County Court of Johnson County, Texas, and not as Clerk of the Commissioners' Court of Johnson County, Texas.

The uncontradicted evidence in the case shows that the election was not holden by the proper number of persons; it appearing that at most voting places in said county, that more than one hundred votes were cast at the last general election; same being the last general election next before the prohibition election relied on, and that the election at all of said precincts was not holden by the requisite number of persons, there being only two judges and two clerks present, and conducting the said election; and that only five persons held said election, and not eight, as required by law.

Because said election was not holden as required by law at said precincts in this: That only one ballot box was used instead of two.

Because the Commissioners' Court had no authority to enter an order prohibiting the sale of intoxicating liquors in Johnson County, Texas, because they had failed to open the ballot boxes and count the votes cast at said election, as required by law; the record of the case showing that the votes polled at said election were not counted in the first instance by the requisite number of men, and were not counted at all by the Commissioners' Court, as required by law.

The record in the case, as evidenced by the certified copies admitted in evidence, will verify the correctness of the statements contained in the above propositions. Rev. Stat., Art. 1639; Covert v. Munson, 53 N. W. Rep., 733; State v. McMackin, 41 Mo. App., 99.

Mr. Ramsey also filed an able printed argument in support of his propositions in his brief, which, owing to its length, the reporter regrets he cannot reproduce.

*Mann Trice,* Assistant Attorney-General, for the State.—Sec. 18, Art. 5, of the Constitution, provides for the election of county commissioners, and among other things provides: "The county commissioners so

chosen with the County Judge as presiding officer, shall compose the County Commissioners' Court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed." This clause of the Constitution does not pretend to enumerate all of the powers to be exercised by the Commissioners' Court, but only enumerates certain powers; and the power then is expressly conferred upon the legislature to prescribe other powers and duties. This was expressly done by the local option act in question, and the authority for so doing is plainly conferred by the provisions of the Constitution above quoted.

The order of January 28, 1895, recites that "said court being in special session for the purpose of opening the polls and counting the votes at election held within and for the County of Johnson on the 17th day of January, 1895, under order of court made on the 19th day of December, 1894, * * * and the court now proceeded to open the polls and count the votes at the said election, in conformity with the laws covering such matters." Then follows each voting precinct box in the county, showing the number of votes cast for and against prohibition at each voting box, and concludes by declaring the result; that 2384 votes had been cast for prohibition and 1448 against prohibition. Then the court proceeds to declare the result of the election for prohibition. This seems to be in strict compliance with Art. 3233, Acts of 1893, page 49. The term "counting the votes," as therein used, evidently means, counting the votes and arriving at the totals as returned by the respective election officers. It is clearly not contemplated that the boxes shall be opened and each vote counted. Ex Parte Williams, 35 Tex. Crim. Rep., 75.

Reference to the order, pages 19 and 20 of the record, fully refutes the fourth position, and shows that such order is in strict compliance with the law.

It is not necessary that the order should be published in the newspaper having the largest circulation in the county. Article 3234 provides, "said order shall be published for four consecutive weeks in some newspaper published in the county wherein such election was held."

."The order declaring the result of the election shall be held to be prima facie evidence that all provisions of the law have been complied with in giving notice of holding such election, and in counting and returning the votes and declaring the result thereof." This provision of the statute clearly is a complete answer to the general assaults made upon the election. In the absence of affirmative proof, showing the illegality of the election (such proof does not appear in this record) the election will be sustained. Moreover it is not attempted or sought to be shown that if the irregularities complained of were eliminated the result of the election would have been different.

HURT, PRESIDING JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $20 and

twenty days' imprisonment in the county jail; hence this appeal.    The information in this case is substantially in the same form as the information in the case of Key v. State, ante, p. 77, and the court did not err in holding it good.  Appellant, by his first bill of exceptions, states that a certified copy of the order of the Commissioners' Court of Johnson County, of date January 29, 1894, was introduced in evidence over his objections. We are not informed by the bill itself what was the character of this order.  The bill of exceptions, in order to have been a complete bill, should have either set out the entire order itself, or have substantially embodied the same in the bill, and also have stated the facts and conditions surrounding its admission, so that this court might have intelligently and correctly passed upon the admissibility of the order in question.   Concede, however, that the bill is intended to question the admissibility of the order of the Commissioners' Court authorizing an election on prohibition in Johnson County, we will notice such objections urged thereto as we deem important.    It has heretofore been held by this court that when an order for a local option election has been made by the Commissioners' Court, in the absence of contrary proof showing irregularities it will be presumed that all of the incipient and necessary steps were taken in order to authorize the order.   Appellant objected to the introduction of said order, on the ground that the Commissioners' Court was a court created by the Constitution of express and limited authority; that among its functions was not enumerated the right to order a local option election; that this was not a function pertaining to county matters.   The local option election law, while a general law, applicable alike to all the counties and subdivisions of counties that may see fit to adopt it, yet appertains to the counties, and involves a matter of county regulation.   The clause of the Constitution upon this subject is as follows:   "The County Commissioners so chosen, with the County Judge, as presiding officer, shall compose the County Commissioners' Court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed." See, Const., Art. 5, § 18.   This subject-matter is expressly placed in the hands of the Commissioners' Court by the Constitution itself.  Concede that the Constitution was silent upon the subject, and that the jurisdiction of the County Commissioners' Court had been specifically defined, it would not follow that the legislature could not confer such further jurisdiction upon the court, especially as to matters over which no other court had jurisdiction.   The clause above referred to seems to apprehend this, and the prohibition amendment as stated refers to County Commissioners' Courts.

To the introduction of the order declaring the result of the election, appellant made a number of objections.   The fourth ground of objection was:   "Because the proper notice of said election was not given; and, if the same was given, it was not given by the proper person." As to this matter, the onus was upon the defendant, in the first instance,

by his bill to show as a matter of fact that proper notices were not given; and, if same were given, that they were not given by a proper person. The objection made by him is not a certificate by the judge that the facts were so. When this order is issued, the presumption obtains that the election was fairly conducted; that the vote had been counted, and the result ascertained; and that everything necessary to holding a legal election had been done. If the notice had not been given, or had not been given by the proper person, appellant must show it. This cannot be done by objecting to the introduction in evidence of the order—we assuming that the order was in proper form. The State was not required to prove that notices of the election had been posted. The issuance of the order assumes such to be true; and, after the introduction of the order, if appellant proposed to attack the election because such notices were not posted as the law requires, this is a matter of fact, and the burden is upon the appellant to make the attack with proof. See, Gaines v. State, ante p. 73. Appellant further objects to the introduction of said order because, he says, "it shows on its face that the polls were not opened and the votes counted by the Commissioners' Court; said act being a condition precedent to the correct rendering of said order prohibiting the sale of intoxicating liquors in Johnson County." As stated in reference to other bills of exceptions, this bill should have contained the order, which it does not. If we look to the order itself, it does not show on its face that the polls were opened and the vote counted by the County Commissioners' Court. If, however, appellant had offered proof that the polls or poll boxes were not in fact before the court, and were not opened and counted, we have heretofore held, in construing this law, that this was not fatal to the authority to issue the order. See, Ex Parte Williams, 35 Tex. Crim. Rep., 75. In that case, however, we did not go into a discussion of Arts. 3389, 3390, Rev. Stat., 1895. By referring to said articles, and construing them together, we think they clearly indicate that the judges holding the election should count the vote, and make due report of the count so made by them to the Commissioners' Court, who examine the tally sheets or report of the judges, and estimate the result. Concede that it was the duty of the Commissioners' Court, before the order proclaiming the result of the election and prohibiting the sale was made, to count the votes, and that they had failed to count the votes as required by the statute, this would not be fatal to the order. See this question discussed and decided in Ewing v. Duncan, 81 Texas, 230. It is also insisted that the result of the election is to be determined by a majority vote of the subdivision or county where the election is held, and that the County Commissioners' Court has no authority to declare the result, and make an order to that effect. It is not contended, as we understand, nor was any evidence offered, that the majority of the voters of Johnson County did not vote in favor of prohibition; but it is urged that the Commissioners' Court was not authorized by the law or Constitution to make an order declaring the result,

after the result has been reached by a vote of the people. As heretofore stated, there is nothing in the Constitution prohibiting the County Commissioners' Court from acting in this matter. On the contrary, the Constitution appears to lodge this matter with the County Commissioners' Court. It certainly could not be contended upon any sound principle that, if the Constitution authorized this matter to be decided by a majority vote and this majority vote declared in favor of prohibition (and this result is not questioned), it would render such election void because some tribunal not authorized by law should afterwards enter an order predicated upon the ascertained will of the people upon this question. The order was further objected to because it did not specially name the purposes for which the sale of intoxicants may be made; that is, for medical and sacramental purposes. This is unnecessary. The law ingrafts the exceptions; and, if the order had not alluded to this matter at all, no one could be legally convicted for selling within the exceptions.

Appellant insists that the evidence in this case shows conclusively that the election in Johnson County was illegal, because he showed by proof that in a great majority of the voting precincts of Johnson County there were more than one hundred voters according to the last census; and that but five officers held the election in said precincts, whereas the law required eight; and also that only one election box was used at each of said election precincts. We have examined the record in this respect, and it shows that it was an admitted fact that at the election preceding the local option election of January 17, 1895, there were polled at seven of the voting precincts in Johnson County, less than one hundred votes, and that at eighteen of the voting precincts in said county there were polled more than one hundred votes It is also an admitted fact that only five officers held said election at each and all of said places, and also that only one ballot box was used in which all the ballots were deposited; so that appellant claims that the evidence showed conclusively that it was not a legal election held within eighteen of the precincts on the 17th day of January, 1895, on the question of local option. This same question is also raised in the charge of the court on this subject. The court, in effect, instructed the jury that said orders of the Commissioners' Court, which were read in evidence, were legal, and prohibited the sale of intoxicating liquors in said county from and after the 6th day of April, 1895. It is insisted by the appellant that the court might have been authorized to give such an instruction where the proof was not controverted, but in this case the evidence was against such an instruction. The law provides that "local option elections shall be held and the returns thereof made in conformity with the provisions of the general laws of the State and by the officers of the election appointed and qualified under such laws." Article 3230, Acts 1893. It is clear from this provision that local option elections must be held as general elections are held. The election in this case occurred in January, 1895, and therefore was required to be held under the law then in force as to general elections. By the act of March

14, 1887 (20th legislature), it is provided "that the presiding officer of each election precinct, which shall have cast more than one hundred votes at the last preceding election, shall on or before the day of the election, from the qualified voters of the precinct, select three judges and four clerks, * * * who are authorized to hold the election." This was not done in eighteen of the precincts in Johnson County, as above stated. As the law requires that local option elections shall be held under the general laws regulating elections generally, and as the election law required that the presiding officer shall select three other judges and four clerks in precincts at which at the former election more than one hundred votes were cast; and as this was not done in this case, it is insisted the election was void. There is no suggestion in this record that the election was not fair, that any voter was deprived of the right to vote, or that the result was not in favor of local option. It is not suggested or questioned that three judges and two clerks performed all the duties required under the general election law, as prescribed for the eight officers. The simple question is that, as there were but two judges and two clerks assisting the presiding judge, and not three judges and four clerks, as required by the general election laws, was the election void? We are of opinion that it was not. The authorities are conflicting upon this question. The early congressional election cases support the affirmative—that the election was void. The latter cases, and better reason, hold the negative—the election was not void. In support of our views we cite State v. Stumpf, 21 Wis., 586. This case is precisely in point. Also case of McCabe v. Arcularins, N. Y. Contested Election Cases, 333. Quoting from the opinion in State v. Stumpf, supra: "Precisely the same objection was taken in the celebrated case of People v. Cook, 8 N. Y., 67, the election held in the Fourteenth ward of the city of New York. The law of that State required, like our own, that there should be three inspectors in each election district. Summing up the facts, the court states 'that there were at times one inspector at the polls, and then three, and then at times four inspectors.' Still the court held that the irregularity did not vitiate the election, because the statutory regulations for conducting elections are directory, and not jurisdictional, in their character; the main object of such laws being to afford all persons entitled to vote the right of exercising the elective franchise, and prevent illegal voting, and ascertaining with certainty the true number of votes cast, and for whom." We also quote from 6 Amer. and Eng. Ency. of Law, p. 325, as follows: "Constitutional and statutory provisions for the conduct of elections are either mandatory or directory, and the violation of mandatory provisions will avoid the election without regard to the motives of the persons, and without any inquiry into the effect of the result of the election. But in cases of directory provisions the election will not be set aside, unless the disregard of the provisions has been such as to show a fraudulent intent or uncertainty has been produced in the result of the election. When the election is fair and honest, courts will not disfranchise voters, unless compelled to

do so by the peremptory requirements of the law." We believe, as there was no testimony in this case tending to show that the irregularity complained of affected the result in the slightest degree, that it was not error for the court to instruct the jury that the local option law was in force. If there had been an issue as to the fairness of the election, or as to the result, or as to whether all of the voters had an opportunity to cast their votes, then such a charge would not have been proper. Then, in such case, questions of fact would have been presented which should have been decided by the jury. The same observations above apply to the question raised of having one voting box at the various precincts. No question is made but that the facilities offered by the one box provided were ample for the purpose of holding the election. See, 6 Amer. and Eng. Ency. of Law, p. 324. We notice that counsel insist that this question has been directly adjudicated by the Court of Appeals of Missouri, and they refer to the cases of State v. Mackin, 41 Mo. App., 99; State v. Prather, Id., 451; State v. Searcy, 39 Mo. App., 393. We have not had access to said cases, but we would observe that they are not decisions of a court of last resort in said state.

Appellant contends that the court should have sustained his motion for a new trial, because the verdict of the jury was against and contrary to the evidence, and failed to show that defendant sold the beer to Bell, as alleged in the indictment. We have very carefully examined the statement of facts, and are of opinion that the testimony supports the verdict. It seems that the appellant furnished Bell with a blank order on a brewery in the city of Dallas for five dozen pint bottles of beer. Bell paid him nothing for it. A few days afterwards he was informed that his beer had arrived; and thereafter, on several different days, among others the 20th day of August, 1895, in Johnson County, defendant delivered to him pint bottles of beer, for which he paid at the rate of fifteen cents per pint bottle, as he received it; that he could get beer from defendant whenever he wanted it; and sometimes he paid twenty-five cents for two bottles, when he got that many. No evidence is offered that Bell was ever furnished with a statement as to the prices of the beer. It is remarkable that appellant should charge the usual price for beer,—fifteen cents per pint bottle, or two bottles for twenty-five cents. We believe that this matter in regard to the order and storage was a subterfuge to cover a sale, and that the jury were therefore authorized to take this view of the case, and convict the defendant for selling the beer to Bell. We have carefully examined this record, and fail to find a reversible error, and the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellants motion for rehearing, filed February 26th, 1897, was overruled without a written opinion.—Reporter.]