### N. C. GRAVES v. BOB RUDD.

Decided June 21, 1901.

**1.—Stock Law—Notice of Election.**

The notice of an order of the commissioners court for the holding of an election, under General Laws 1899, page 220, to determine whether live stock should be prohibited from running at large, need not run in the name of the State of Texas, since, the proceeding being special, the issuance of such order is not controlled by the provisions of article 1558, Revised Statutes, requiring process to run in the name of the State of Texas.

**2.—Same—Verbal Discrepancy Not Vitiating Election.**

The validity of a stock law election is not affected by the fact that the petition therefor was for an election "to determine whether horses, mules, jacks, jennies, and cattle," should be prohibited from running at large, where the order for the election and the notices thereof used the word "jennets," instead of "jennies;" nor because of the fact that the order declaring the result of the election used the words "jennies or cattle" instead of "jennies and cattle," since no uncertainty could result from these verbal discrepancies.

**3.—Same—Filing of Petition—Order at Next Term of Court.**

There were eight election or justice precincts in the county, and a petition for a stock law election was made out on eight separate sheets, and the requisite number of petitioners for each precinct signed the sheets respectively, and

the sheets were sent to the county clerk at different times and filed by him at different dates. When the last one was received, he placed them together in a bundle, indorsing his file mark on the outside one as of that date. Held that, since the court could not determine until all the sheets were received whether the election would be ordered for the county at large, or only for one or more subdivisions, the sheets would be considered as forming in the aggregate one petition, filed as of the date of filing the bundle, and the ordering of an election at the next regular term of court after such date was a compliance with the law requiring the order to be made at the next regular term of court after the filing of the petition.

**4.—Same—Constitutionality of Act.**

The stock law (General Laws 1899, page 220) is not obnoxious to the objections that it is in violation of the Constitution of the United States and of this State in that it deprives a person of his property without due process of law, and that it denies him his privilege of having property rights adjudicated by a jury, and that it prohibits an appeal in all cases arising under its provisions.

**5.—Same—Cattle Escaping from Inclosure.**

Where plaintiff's cattle were trespassing on the cultivated land of defendant after the adoption of the stock law, and were impounded by him, plaintiff could not claim exemption from the penalties of the act as to the payment of the impounding fees and of the damages caused by the cattle because of the fact that they had escaped from plaintiff's field, inclosed by a good fence, and without fault on his part.

Appeal from the County Court of Grayson. Tried below before Hon. J. D. Woods.

*P. T. Shores* and *Vowell & Caruthers,* for appellant.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellant sued appellee in the County Court of Grayson County for the recovery of twelve head of cattle, of the value of $300, and had them sequestered. Appellee claimed damages and fees under the "stock law" passed by the Twenty-sixth Legislature (Gen. Laws 1899, page 220), as in force in said county. Trial was before the court. Judgment was rendered in favor of appellant for his cattle upon payment of fees and damages, and in favor of appellee for $2 damages and $24 fees and costs of suit; to which judgment he excepted and prosecuted an appeal.

The case is brought here as an agreed case. The only questions presented are: 1. Was the stock law legally adopted in said county? 2. Is it constitutional? 3. Does it apply to this case? The facts sufficiently appear in the opinion.

Under the first question it is insisted that the notices of election required by section 6, chapter 128, General Laws of Twenty-sixth Legislature, known as the stock law, should run in the name of the State of Texas, and that because the notices did not so run, the election is void. The contention is that the notices of election provided for in section 5 of said act must conform to the requisites of article 1558, Revised Statutes. This article refers to the form of process issued by the commissioners court, and requires that the same shall be issued by the clerk thereof, and run in the name of the State of Texas. The section of the

act under consideration provides that "immediately after the passage of an ordinance for an election by the commissioners court the county judge shall issue an order for such election and cause public notice thereof to be given," etc. It will be seen that this section makes it the duty of the county judge to cause the notices to be given. The proceeding is special, and article 1558, Revised Statutes, is not applicable to the same. The notices were given as required by the act, and were sufficient.

Again, it is insisted that the law was not in force in Grayson County, because the petition was for an election "to determine whether horses, mules, jacks, *jennies,* and cattle" should be prohibited from running at large, while the order for election and the notices of election contained the word *"jennets,"* instead of jennies. The contention is that these words do not mean the same thing. The criticism is not sound. There can be no doubt as to what animals were meant by the petition. The rule is that the ordinary signification of words is to be given them. It is further insisted that the law is not in force in Grayson County because the petition, notices of election, and order for election used the words "horses, mules, jacks, jennets, *and* cattle," while the order declaring the result of the election used the words "horses, mules, jacks, jennies *or* cattle." There is no force in this contention. There is no uncertainty in the petition, notices of election, order for election, and the order declaring the result.

It is also contended that the law is not in force, because the order for election was not made at the first regular term of the commissioners court after the filing of the petition for election, and hence the election was void. In order to put this act in force in a county entitled to its benefits the commissioners court, upon the presentation of a written petition setting forth clearly the class or classes of animals enumerated in the preceding article which the petitioners desire shall not run at large in such county, signed by 100 freeholders of the county and not less than twelve freeholders in each justice precinct, shall pass an order at the next regular term after the filing of such petition, directing an election to be held throughout the county on a day designated in the order, and not less than thirty days from the date of such order. It then provides for notices of such election, the manner of holding it, etc., and how the result shall be made known.

The evidence shows that seven sheets of paper, each headed with a petition asking that an election be ordered to determine whether certain stock therein named should run at large, and each signed by certain freeholders of Grayson County, were introduced in evidence. The headings are all alike. These several sheets came to the hands of the clerk of the Commissioners Court at different times,—one on August 29, 1899; one on September 18, 1899; one on October 11, 1899, each marked filed by the clerk on the day of its receipt. Others were returned after the regular November term of that court and not marked filed. There were eight sheets in all. The one from precinct No. 2

had been lost, and was not produced on the trial. There are eight justice precincts in Grayson County. These eight sheets all came to the hands of the clerk before the regular February term, 1900, of said court, and contained the names of over 100 freeholders, and twelve from each justice precinct. After they had all been so returned, the clerk put all the sheets in a bundle, the one containing the name of J. H. Reddick being on the outside sheet, and placed his file mark thereon, it being February 8, 1900. The Commissioners Court made an order for an election as stated in the order upon the petition of J. H. Reddick et al., and it recited that "it appearing that there are more than 100 freeholders who have signed said petition, and that there were no less than twelve freeholders from each justice precinct in said county who had signed said petition, it is therefore ordered," etc. We think that the eight sheets of paper constituted but one petition. This petition was to determine whether certain stock therein named should be permitted to run at large in Grayson County. It called for an election to be held throughout the county. An election could be called under the law to determine whether stock should be permitted to run at large in any subdivision of the county, in which event the election would only be called for such subdivision and the petition would only be signed by the requisite number of freeholders residing in such subdivision. It is to be inferred that a copy of the petition was circulated in each justice precinct in order to procure the signatures of the requisite number of freeholders from such precinct. The petition was not complete until all the sheets of paper had been returned to the clerk, and when returned, it was his duty to file the same, which he did. The Commissioners Court at its next regular term made the order directing an election to be held. That court treated the several sheets of paper as one petition. This petition was sufficient to authorize the court to make the order.

Under the second question presented by this appeal it is contended that the court erred in holding the stock law in force, because the same is contrary to and in violation of the Constitution of the United States and the State of Texas in that (1) it deprives a person of his property without due process of law; (2) it denies him the privilege of having property rights adjudicated by a jury; and (3) it prohibits an appeal in all cases arising under this provision. We deem it unnecessary to consider these objections in detail. The law is not subject to the criticisms made. This act was evidently prepared to meet the views of the Supreme Court embraced in its opinion in the case of Armstrong v. Traylor, 87 Texas, 598. The objections pointed out in that decision to the act under consideration in that case were guarded against and avoided by the Legislature in framing the act now under consideration, known as chapter 128, General Laws of Twenty-sixth Legislature, page 220. The Court of Criminal Appeals of this State recently passed upon this act and held the same constitutional. Robertson v. State, 2 Texas Ct. Rep., 994, 63 S. W. Rep., 884.

· It is insisted under the third question presented to us that the law has no application to this case, because plaintiff's cattle were in a field which was inclosed by a good fence and escaped therefrom without fault on his part. By section 14 of the act under consideration it is provided that "If any stock forbidden to run at large shall enter the inclosed lands, or shall, without being herded, roam about the residence, lots, or cultivated lands of any person other than the owner of such stock, without his consent, in any county or subdivision in which the provisions of this chapter have become operative in the manner provided in the preceding section, the owner, lessee, or person in lawful possession of said lands, may impound such stock and detain the same until his fees and all damages occasioned by said stock are paid to him."

The stock in question did enter into the inclosed field of the defendant after the adoption of the stock law by Grayson County, forbidding said stock to run at large, and defendant, acting under the statute, proceeded to impound the cattle. The cattle were trespassing upon the cultivated land of defendant at the time that he took the same into his possession. Under the act he was authorized to impound the cattle and to hold the same until his fees and damages were paid as provided by the terms of said act.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.